**Donald G. KISTLER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 35A04–1004–PC–245.

Court of Appeals of Indiana.

Nov. 15, 2010.

Susan K. Carpenter, Public Defender of Indiana, Anne–Marie Alward, Special Assistant to the State Public Defender, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Donald Kistler appeals the post-conviction court's denial of his petition for post-conviction relief. Kistler raises two issues, which we revise and consolidate as whether the post-conviction court erred in denying Kistler's petition for relief. We affirm.

The relevant facts as discussed in Kistler's direct appeal follow:

> Sometime in late 2003, Kistler was visiting the home of a friend who had two daughters. The older daughter, N.M., was less than fourteen years old at the time. Kistler went into N.M.'s room, where N.M. was playing with dolls, and closed the door. Kistler sat down beside N.M. and, through her clothing, fondled her chest and vagina. He then instructed N.M. not to tell anyone what had happened.
>
> Early in the morning on March 16, 2005, Kistler was again visiting the same friend's house. He went in where N.M.'s younger sister, C.M., was lying down. Kistler lay down and got under the blanket that was covering ten-year-old C.M. Once under the blanket, Kistler placed his hand inside C.M.'s pajama bottoms and underwear and fondled her buttocks and vagina. He also inserted his finger into her anus. Both N.M. and C.M. had previously been molested by their biological father, a fact that was known to Kistler.

*Kistler v. State,* No. 35A02–0602–CR–132, 857 N.E.2d 1048, slip op. at 2–3 (Ind.Ct. App. Nov.28, 2006), *trans. denied.*

On March 29, 2005, the State charged Kistler with child molesting as a class A felony and child molesting as a class C felony. *Id.* at 3. The State also alleged that Kistler was an habitual offender. *Id.* The information for the habitual offender charge alleged that Kistler had accumulat-

ed at least two prior unrelated convictions: (1) operating a vehicle while a habitual traffic violator as a class D felony; and (2) operating while intoxicated as a class D felony. On November 1, 2005, Kistler and the State entered into a plea agreement whereby Kistler agreed to plead guilty to child molesting as a class B felony and child molesting as a class C felony and in exchange the State agreed to dismiss the habitual offender allegation and to reduce the class A felony count to a class B felony. *Id.* Pursuant to the agreement, sentencing was left to the trial court's discretion. *Id.*

The court found the following aggravating factors: (1) there were multiple victims of the crimes; (2) Kistler had a prior criminal history of great length including two prior unrelated felony convictions and five unrelated misdemeanor convictions, "two of which had victim impact." Sentencing Hearing Transcript at 50. The court noted that Kistler "was aware of—that the victims of his sexual charges—sexual abuse, were already and have already been sexually abused by their family." *Id.* The court found that "the plea of guilty is not of any value in determining lessening of the sentence in that a plea or a charge of habitual offender was dismissed and granted to the defendant a lesser period of time." *Id.* The court found no mitigating factors. The court sentenced Kistler to eight years for the class C conviction and twenty years for the class B conviction and ordered that the sentences be served consecutively. Thus, Kistler received an aggregate sentence of twenty-eight years.

On appeal, Kistler argued that the trial court erred in identifying aggravating and mitigating circumstances and that his sentence was inappropriate in light of the nature of the offense and the character of the offender, and this court affirmed. *Kistler,* slip op. at 2.

On May 16, 2007, Kistler filed a *pro se* petition for post-conviction relief. On November 16, 2009, Kistler, represented by a public defender, filed a Motion for Leave to Amend *Pro Se* Petition for Post–Conviction Relief, and argued that his guilty plea was not entered knowingly, intelligently, or voluntarily and that he was denied the effective assistance of counsel. Specifically, the petition alleged that any habitual offender charge was improper and that thus the threat of an habitual offender enhancement to his sentence rendered his plea illusory and "[h]ad [Kistler] known that the Habitual Offender enhancement could not be used against him, he would not have pled guilty, but insisted on going to trial." Appellant's Appendix at 53. The State did not object to Kistler's motion to amend his petition, and the court scheduled a hearing. At the hearing, the court indicated that it would "look at this based upon the amended claim of November the 16th." Post–Conviction Hearing Transcript at 24.

At the hearing, Kistler testified that he would not have pled guilty if he had known that he was not an habitual offender. Kistler also testified that at the time that he pled guilty he did not know the amount of time he was facing for the habitual offender charge. Kistler's appellate counsel also testified, and Kistler introduced the transcripts from previous hearings, an affidavit of his trial counsel, and the charging information for the habitual offender allegation. The post-conviction court denied Kistler's petition. The relevant portion of the court's order states:

6. [Kistler] presents two claims in regard to his guilty plea. First, [Kistler] claims that his plea was not entered knowingly, voluntarily, and intelligently.

7. Here, there is no question that at the time the bargain was made that the habitual offender enhancement filed against [Kistler] was not legally supportable. The question for this Court is whether the improper threat *motivated* [Kistler] to plead guilty. [Kistler] was 38 years old at the time of this plea of guilty. With the habitual offender enhancement he faced a maximum sentence of 88 years and without the habitual offender enhancement he faced a maximum sentence of 58 years. He agreed with the State to plead to a class B felony and a class C felony under which he faced a maximum sentence of 28 years. [Kistler] had confessed to touching the girls to police, and there was no affirmative defense available. [Kistler] agreed to a deal that gave him a maximum sentence that would allow him the chance to be released while he was middle-aged. The other possibilities whether 58 or 88 years would not allow [Kistler] to be released until he was nearly 70 years old or just over 80 years old respectively. [Kistler] testified that the reason that he filed his Petition was to receive a shorter prison sentence; he did not state that he wanted to withdraw his plea because he believed that he was innocent of the charges. [Kistler] has not shown that his guilty plea was obtained by the improper threat. [Kistler] is not entitled to relief on this ground.

Appellant's Appendix at 78–79. The court's order also stated:

The Court notes that [Kistler] at the hearing seemed unclear on the consequences of his being successful on his petition. [Kistler] testified that he believed that he would get less time if he pursued his petition and that was the reason that he filed it. Given the fact that [Kistler] could once again be facing a maximum penalty of thirty years more than he received, it is not clear [Kistler], given the option, would want a chance to take the case to trial. *See* Indiana Post–Conviction Rule 1(10)(c). If it is [Kistler's] plan to simply plead guilty according to the same terms as before, that undercuts his claim that he would not have pled guilty given the proper advice.

*Id.* at 80.

 Before discussing Kistler's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind.2004); Ind. Post–Conviction Rule 1(5). When appealing from the denial of postconviction relief, the petitioner stands in the position of one appealing from a negative judgment. 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post–Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

■ The issue is whether the post-conviction court erred in denying Kistler's petition for relief. Kistler argues that his plea was illusory because it was induced by the State's agreement to dismiss an invalid habitual offender charge. Kistler also argues that he received ineffective assistance of trial counsel because his trial counsel did not move to dismiss the habitual offender count, did not advise Kistler that he was not eligible for the habitual offender charge, and did not correctly inform Kistler of the sentence that he actually faced.

■ The State correctly concedes that Kistler was improperly charged as an habitual offender.[1] "[A] bargained plea, motivated by an improper threat, is to be deemed illusory and a denial of substantive rights." *Champion v. State*, 478 N.E.2d 681, 683 (Ind.1985) (citing *Gibson v. State*, 456 N.E.2d 1006 (Ind.1983)). "At the moment the plea is entered, the State must possess the power to carry out any threat which was a factor in obtaining the plea agreement which was accepted." *Daniels v. State*, 531 N.E.2d 1173, 1174 (Ind.1988). "The lack of that real power is what makes the threat illusory and causes the representation to take on the characteristics of a trick." *Id.* *See also Nash v. State*, 429 N.E.2d 666, 671 (Ind.Ct.App.1981) (stating that a threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility,

renders the plea involuntary). In *Segura v. State*, the Indiana Supreme Court held:

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the postconviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

749 N.E.2d 496, 504–505 (Ind.2001). Thus, it is immaterial whether Kistler's claim is of an involuntary plea or ineffective assistance of counsel. *See Willoughby v. State*, 792 N.E.2d 560, 563 (Ind.Ct.App.2003) (citing *Segura* and holding that it was immaterial whether the petitioner's claim was characterized as an involuntary plea or ineffective assistance of counsel because, under either standard, the petitioner must demonstrate that the intimidation resulting from his trial counsel's failure to inform him of the single larceny rule was material to his decision to plead guilty), *trans. denied.*

■■ Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and

---

1. The information for the habitual offender charge alleged that Kistler had accumulated at least two prior unrelated convictions: (1) operating a vehicle while a habitual traffic violator as a class D felony; and (2) operating while intoxicated as a class D felony. At the time that Kistler committed the offenses, Ind. Code § 35–50–2–8 provided that "the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convic-

tions." "However, a prior unrelated felony conviction under IC 9–30–10–16, IC 9–30–10–17, IC 9–12–3–1 (repealed), or IC 9–12–3–2 (repealed) may not be used to support a sentence as a habitual offender." Ind.Code § 35–50–2–8(e) (2004). Kistler's conviction for operating a vehicle while a habitual traffic violator as a class D felony was based upon Ind.Code § 9–30–10–16. Thus, the charging information improperly alleged that Kistler was an habitual offender because it relied upon Kistler's conviction for operating a vehicle while a habitual traffic violator.

that the petitioner was prejudiced by the deficient performance. *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind.2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied*), *reh'g denied, cert. denied*, 534 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind.2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind.2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

Because Kistler was convicted pursuant to a guilty plea, we must analyze his claims under *Segura*. *Segura* categorizes two main types of ineffective assistance of counsel cases. *Smith v. State*, 770 N.E.2d 290, 295 (Ind.2002). The first category relates to "an unutilized defense or failure to mitigate a penalty." *Willoughby*, 792 N.E.2d at 563. The second category relates to "an improper advisement of penal consequences," and this category has two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure;" or (2) "claims of incorrect advice as to the law." *Id.*

Kistler's claims fall under the second category of an improper advisement of penal consequences. In *Segura*, the Court concluded:

> [I]n order to state a claim for post-conviction relief a petitioner may not simply allege that a plea would not have been entered. Nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. To state a claim of prejudice from counsel's omission or misdescription of penal consequences that attaches to both a plea and a conviction at trial, the petitioner must allege, in *Hill's* terms, "special circumstances,"[2] or, as others have put it, "objective facts"[3] supporting the conclusion that the decision to plead was driven by the erroneous advice.
>
> We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised. Nevertheless, ... a petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. 366, 88 L.Ed.2d 203.

*Segura*, 749 N.E.2d at 507.

We observe that Kistler's appellate counsel testified at the post-conviction hearing that he did not notice any affirma-

---

**2.** *Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

**3.** *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir.1996); *State v. Donald*, 198 Ariz. 406, 10 P.3d 1193, 1201 (2000) [, *review denied, cert. denied*, 534 U.S. 825, 122 S.Ct. 63, 151 L.Ed.2d 30 (2001) ].

tive defenses, that there was no evidence that Kistler suffered from mental disease or insanity, and that there was no evidence of mistaken identity. Kistler's appellate counsel also testified that Kistler had spoken to law enforcement and admitted to some touching but not exactly the touching that resulted in the charges.

While Kistler testified that he would not have pled guilty if he had known that he was not an habitual offender, he also testified that at the time that he pled guilty he "didn't really know" how much time he was facing for the habitual offender charge other than that he knew that the maximum sentence was eighty-eight years. Post–Conviction Hearing Transcript at 18.

Further, even without considering the dismissal of the habitual offender charge, Kistler received a substantial benefit from his guilty plea. Specifically, the State reduced the charge of child molesting as a class A felony to a B felony. Thus, Kistler, who was thirty-eight years old at the time of the guilty plea hearing, faced a maximum sentence, if properly advised, of fifty-eight years if he went to trial, but faced a maximum sentence of twenty-eight years if he accepted the plea agreement.

We also observe that the post-conviction court noted that Kistler was "unclear on the consequences of his being successful on his petition." Appellant's Appendix at 80. Specifically, the court noted:

[Kistler] at the hearing seemed unclear on the consequences of his being successful on his petition. [Kistler] testified that he believed that he would get less time if he pursued his petition and that was the reason that he filed it. Given the fact that [Kistler] could once again be facing a maximum penalty of thirty years more than he received, it is

not clear [Kistler], given the option, would want a chance to take the case to trial. *See* Indiana Post–Conviction Rule 1(10)(c). If it is [Kistler's] plan to simply plead guilty according to the same terms as before, that undercuts his claim that he would not have pled guilty given the proper advice.

*Id.* The record supports the court's finding. On cross examination, Kistler testified that he understood that if he was successful in his petition for post-conviction relief that he would be facing charges that carry a maximum sentence of fifty-eight years and that he still wanted to withdraw his plea even though he was sentenced to only twenty-eight years. However, on redirect examination, the following exchange occurred:

Q: Um, Mr. Kistler you and I have discussed about what would happen if you were successful in this case?

A: Yes.

Q: And what is your understanding of, of that?

A: Uh, it would be less time.

Q: Well, it would be less than eighty-eight years . . .

A: Yes, yes.

Q: . . . that you could not be charged with the habitual offender, is that correct?

A: Yes, yes.

Q: And do you, are you also aware of the fact that under post conviction rule one, section ten uh, you can get more time only in very uh, specific circumstances, is that . . .

A: Yes.

Q: . . . correct?

A: Yes.

Post–Conviction Hearing Transcript at 20–21. Based upon Ind. Post–Conviction Rule 1(10), Kistler would face a maximum sentence of fifty-eight years if he did not accept the State's offered plea agreement, which included a maximum sentence of twenty-eight years.[4]

Under the circumstances, we cannot say that Kistler has demonstrated that he would not have pled guilty even if properly advised. *See Grant v. State,* 585 N.E.2d 284, 288 (Ind.Ct.App.1992) (acknowledging that there may be circumstances where the mistake about the maximum sentence is so substantial and pervasive as to infect the entire proceeding and amount to the improper coercion of the defendant to take a plea agreement, but that to the seventeen-year-old defendant a possible sixty-year sentence is reasonably every bit as coercive as a sentence of ninety years and that the defendant was not prejudicially influenced by the trial court's misstatement), *cert. denied,* 504 U.S. 959, 112 S.Ct. 2311, 119 L.Ed.2d 231 (1992). We also cannot say that Kistler has demonstrated a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised.[5] Accordingly, his claim of ineffective assistance on this basis fails.

4. Ind. Post–Conviction Rule 1(10) provides:
 (a) If prosecution is initiated against a petitioner who has successfully sought relief under this rule and a conviction is subsequently obtained, or
 (b) If a sentence has been set aside pursuant to this rule and the successful petitioner is to be resentenced, then the sentencing court shall not impose a more severe penalty than that originally imposed unless the court includes in the record of the sentencing hearing a statement of the court's reasons for selecting the sentence that it imposes which includes reliance upon identifiable conduct on the part of the petitioner that occurred after the imposition of the original sentence, and the court shall give credit for time served.
 (c) The provisions of subsections (a) and (b) limiting the severity of the penalty do not apply when:
 (1) a conviction, based upon a plea agreement, is set aside;
 (2) the state files an offer to abide by the terms of the original plea agreement within twenty (20) days after the conviction is set aside; and
 (3) the defendant fails to accept the terms of the original plea agreement within twenty (20) days after the state's offer to abide by the terms of the original plea agreement is filed.

5. Kistler relies upon *Reeves v. State,* 564 N.E.2d 550 (Ind.Ct.App.1991), *trans. denied.* In *Reeves,* Reeves was twenty-eight years old at the time he pled guilty. 564 N.E.2d at 553. Reeves's attorney advised him that he faced the choice of accepting a plea agreement which carried a maximum sentence of fifteen years or going to trial with the prospect of receiving sentences totaling sixty years which included an improper habitual offender charge which would carry an additional thirty years. *Id.* The court held that "[t]he uncontradicted evidence leads unerringly to the conclusion that the erroneous advice Reeves received from his court-appointed counsel played a significant part in the plea negotiations and rendered the bargain illusory." *Id.* The court also held that "Reeves's attorney's recommendation that he accept the plea agreement to avoid being charged as an habitual offender—when Reeves was not habitual eligible—constitute[d] ineffective assistance of counsel rendering Reeves's plea involuntary."

 We initially observe that *Reeves* was decided prior to the Indiana Supreme Court's decision in *Segura* which held that "a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised." 749 N.E.2d at 507. We also note that the ages of the defendants and the lengths of time between the maximum sentence under the guilty plea, the maximum sentence under the exaggerated potential sentence, and the maximum sentence if properly charged differ between *Reeves* and the present case. Thus, we do not find *Reeves* instructive.

Kistler also argues that "even if counsel's failure to recognize that Kistler was not an Habitual Offender did not render his plea involuntary, it prejudiced Kistler because it affected the trial court's sentencing decision, and the review of that decision on direct appeal." Appellant's Brief at 12. The State concedes that "[i]t is undeniable that the sentencing court relied upon the habitual offender count as part of that calculus," but argues that "[n]onetheless, even had the count been properly recognized as invalid, the sentencing court would almost certainly have found that the thirty-year differential that [Kistler] secured for his benefit in his plea ... more than offset whatever responsibility his plea agreement represented." Appellee's Brief at 9.

While the trial court and the Court of Appeals relied upon the fact that the plea agreement resulted in the dismissal of the habitual offender charge, we observe that the plea agreement also reduced the class A felony count to a class B felony. Thus, even without considering the dismissal of the habitual offender charge, Kistler received a substantial benefit from his guilty plea because Kistler faced a maximum sentence of only twenty-eight years instead of a maximum sentence of fifty-eight years. We cannot say that Kistler has demonstrated that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, Kistler's claim of ineffective assistance fails. *See Timberlake v. State,* 753 N.E.2d 591, 610 (Ind.2001) (holding that petitioner's ineffective assistance claim failed where there was not a reasonable probability that the jury would have found the proposed mitigators to outweigh the very weighty aggravator), *reh'g denied, cert. denied,* 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002).

For the foregoing reasons, we affirm the post-conviction court's denial of Kistler's petition for post-conviction relief.

Affirmed.

DARDEN, J., and BRADFORD, J., concur.