**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 24 2013, 6:26 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ROBERT P. BENAVIDES**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ROBERT P. BENAVIDES,          )
                              )
   Appellant-Petitioner,      )
                              )
      vs.                 )        No. 18A04-1210-PC-511
                              )
STATE OF INDIANA,             )
                              )
   Appellee-Respondent.       )

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-1010-PC-5

**July 24, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Robert P. Benavides (Benavides), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUES

Benavides raises two issues on appeal, which we restate as:

(1) Whether Benavides received ineffective assistance of counsel; and

(2) Whether the post-conviction court abused its discretion by making or failing to make certain procedural rulings.

## FACTS AND PROCEDURAL HISTORY

*Facts of the Crime and Guilty Plea*

On November 27, 2002, Benavides and Jerry Wilson (Wilson) spent time together in Room No. 22 of the Econo Motel located in Muncie, Indiana. While in the room, Benavides called his girlfriend, Lindsey Barton (Barton), and asked her to pick him up. Thereafter, Barton's friend Kimberly Carroll (Carroll) picked Barton up and they both went to the Econo Motel to see Benavides. In the meantime, Benavides and Wilson were having discussions about robbing the manager of the motel. Benavides told Wilson to "come on." (Appellant's App. p. 30). Wilson then picked up a handgun and they walked out of the hotel room.

2

Benavides and Wilson got into the car driven by Carroll, and Barton was a passenger in the car. After driving around for a while, Carroll stopped the car near the motel. Benavides and Wilson got out and walked back to the motel towards the residence of the owner, Hitesh Patel (Patel). Benavides kicked in the door of Patel's apartment and entered the premises with Wilson. Both Wilson and Benavides were wearing masks and Benavides was armed with a handgun. Inside the apartment, Benavides and Wilson robbed Patel and his wife at gun point. After Benavides and Wilson took money and a wallet from Patel, they exited the apartment. They ran back to Carroll's car shouting, "go, go, go." (State's Exh. 1, pp. 3, 25). Once the two men got back into the car, Barton saw that Benavides and Wilson had money in their hands and they began counting it. Benavides told Wilson to get rid of the credit cards, which Wilson threw out of the window.

Patel gave a statement to the police in which he described his assailants as two black males. However, Benavides was white and Wilson was black. Patel also told the officers that both assailants were wearing masks covering their faces, such that Patel could only "see a little around the eyes and the mouth." (Exh. Vol. p. 87). Patel stated that one assailant pushed Patel's head down on a couch face-first so that he was unable to see very well.

The probable cause affidavit and other evidence that was forwarded to the prosecutor's office included the following witness statements: (1) Patel identified Wilson (in a photographic lineup) as having stayed in Room No. 22 of the motel and having

3

worn the same clothes as one of the assailants; (2) a woman overheard Benavides whispering with Wilson in Room No. 22 and telling him to "come on," before Wilson picked up a handgun and he and Benavides walked out of the room; and (3) Carroll met Benavides at the motel and drove him and Wilson in a car near the motel; after being dropped off near the motel, Benavides and Wilson ran back to the car telling Carroll to "Go! Go! Go!," and Benavides counted several hundred dollars which he split with Wilson; (4) Barton was dating Benavides at the time of the robbery; She saw Benavides walk toward the motel with Wilson and saw Benavides return with money minutes later. Moreover, Wilson made a full confession admitting that he and Benavides kicked in the door and robbed the motel owner and his wife at gunpoint. Benavides also admitted to the police that he and Wilson entered Patel's apartment and took money from him.

On March 4, 2003, Benavides successfully filed a motion to suppress a portion of his statements to the police. On March 13, 2003, after consulting with counsel, Benavides entered a plea of guilty to Count II, burglary, as a Class B felony, Ind. Code § 35-43-2-1(1). In exchange for the plea of guilty, the State agreed to dismiss Count I, armed robbery, a Class B felony, I.C. § 35-42-5-1; Count III, unlawful possession of a firearm by a serious violent felon, a Class B felony, I.C. § 35-47-4-5; and Count IV, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11 . During the plea hearing, Benavides acknowledged that he understood the plea agreement and that his guilty plea was made of his own free will. The trial court found that Benavides understood the burglary charge to which he pled guilty, that he understood the possible

4

sentences for the crime, and that the plea was free and voluntary. On April 10, 2003, the trial court entered judgment on Benavides' plea and sentenced him to ten years in the Department of Correction, to be served consecutively to his sentence under Cause No. 18C01-0212-FB-21 ("FB-21") (Exh. Vol. 62, 78-83).

*Facts on Post-Conviction Relief*

On October 8, 2010, Benavides filed a petition for post-conviction relief seeking to set aside his guilty plea. On August 13, 2012, a hearing was held nine years after Benavides had pled guilty. Benavides called his trial counsel, Attorney Kelly Bryan (Attorney Bryan), to testify.

Attorney Bryan testified that typically, when a plea offer is made, he communicates the plea offer to the client, and "weigh the pros and cons of the plea offer versus trial." (Tr. p. 33). Attorney Bryan stated that there was no reason to think he did not follow proper practices in this case because he "uniformly follows those practices and procedures." (Tr. p. 33). He testified that it is "always the [d]efendant's choice" whether to plead guilty. (Tr. p. 33).

Attorney Bryan acknowledged that at the time he represented Benavides in this case, he was also representing him in FB-21. FB-21 was tried on March 10 and 11 of 2003, and resulted in Benavides' conviction of five Class B felonies including burglary, robbery, and confinement. Instead of proceeding to trial in the instant case, which had been scheduled for March 17, 2003, Benavides pled guilty on March 13, 2003.

5

During Benavides' direct examination of Attorney Bryan in the post-conviction proceedings, the following exchange occurred:

> [BENAVIDES]: Isn't it true that you told me that I was facing a potential hundred year sentence per case in FB-21, in which I was just convicted the day before, five B felonies?
>
> [ATTORNEY BRYAN]: I don't have an independent recollection of that. It wouldn't be uncommon for us to discuss penalties though.
>
> [BENAVIDES]: Okay. Isn't it true that you told me that if I pled guilty, it would show the judge that I am remorseful and considering my age, I may receive a favorable sentence for both cases?
>
> [ATTORNEY BRYAN]: I really don't have an independent recollection of what we discussed, but I think that it's normal that we talk about mitigating circumstances that could be argued such as acceptance of responsibility.
>
> [BENAVIDES]: Isn't it true that I told you I did not commit the motel robbery?
>
> [ATTORNEY BRYAN]: That, I don't recall.

(Tr. p. 28). Benavides, himself, testified as follows:

> On March the 12th, [Attorney Bryan] brought this plea agreement, and he talked about the previous conviction. I was convicted on five (5) B felonies and told me I was facing a potential hundred (100) years. And he told me that I was charged on this case right here with armed robbery, burglary, and then when I was arrested, I was in possession of a handgun and marijuana. And he told me that he cannot beat the gun case and that him being a jury trial lawyer, that if the jury finds you guilty of possession of a handgun, they're more than likely to convict on a robbery and burglary as well. And at the time, I'm young, I'm scared. I'm facing a hundred (100) years on this other cause number, and he said if you plead guilty to this ten (10) years capped, you're more likely to receive a lenient sentence when you go to sentence for both cause numbers. And I agreed. I agreed to plead guilty on his---on him telling me that. I was scared and that's why I pled guilty.

(Tr. pp. 38-39).

*Procedural Facts on Post-Conviction Relief*

Benavides' *pro se* Post-Conviction Relief petition asked for representation by the State Public Defender. On November 16, 2010, the Public Defender filed an appearance, which was withdrawn on October 26, 2011. On April 23, 2012, a telephonic pre-trial conference was held, and according to the post-conviction court's docket entry, Benavides, "inform[ed] the [c]ourt he wish[ed] to proceed with the Post-Conviction Relief without counsel." (Exh. Vol. 106). On August 6, 2012, Benavides filed a Motion for Order to Release Prisoner Off of Max I Status. In his motion, Benavides claimed that Delaware County Jail Officials had denied him access to the jail's law library.

At the August 13, 2012 Post-Conviction Relief hearing, Benavides was present in court and represented himself. Benavides had subpoenaed Attorney Bryan and Officer Jeff Lacy (Officer Lacy), who was the investigating officer of the robbery. Both were present in court. Although Benavides told the post-conviction court that he had been "denied access to the law library," Benavides filed his memorandum of law in open court. (Appellant's App. p. 25). At the close of the hearing, Benavides told the court, "I wrote you a letter and requested counsel." (Tr. p. 41). The post-conviction court reminded Benavides that the Public Defender had withdrawn, and informed Benavides that he had done a "very good job" representing himself. (Tr. p. 41). Furthermore, the court stated that, "it's our policy that we don't appoint public defenders for post-conviction matters…I think you presented everything clearly, and I understand your position." (Tr.

7

p. 41). On September 27, 2012, the post-conviction court issued its findings of fact, conclusions of law, and judgment denying relief. (Appellant's App. pp. 46-57).

Benavides now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I.  *Standard of Review*

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

### II.  *Ineffective Assistance of Trial Counsel*

Benavides contends that he was denied effective assistance of counsel. Specifically, he asserts that his trial counsel overlooked a potential defense, and gave erroneous advice as to penal consequences. To prevail on a claim of ineffective assistance of counsel, a petitioner must show two things: (1) the lawyer's performance fell below an "objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

8

would have been different." *Segura v. State*, 749 N.E.2d 496, 501 (Ind. 2001), (*quoting Strickland v. Washington,* 466 U.S. 668, 687-88, (1984)). Since Benavides has pled guilty in this case, Indiana law generally recognizes two main types of ineffective assistance of counsel claims where the Defendant was convicted pursuant to a guilty plea. *Id*. at 502. The first category relates to errors or omissions that overlook a defense or fail to mitigate a penalty. *Kistler v. State*, 936 N.E.2d 1258, 1263 (Ind. Ct. App. 2010). The second category relates to "an improper advisement of penal consequences," and this category consists of two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure;" or (2) "claims of incorrect advice as to the law." *Id.*

A. *Defense*

Benavides insists that his trial counsel overlooked a defense based upon Patel's statement to the police that the assailants were two black males. In order to set aside a conviction due to an attorney's failure to raise a defense, a petitioner who has pled guilty must establish that there is a reasonable probability that they would not have been convicted had they gone to trial and utilized the omitted defense. *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003), (*citing State v. Van Cleave*, 674 N.E.2d 1293, 1306 (Ind. 1996)).

The record reflects that Patel's statement is actually included in Exhibit 1. Patel's statement was part of the discovery that the State had provided to Attorney Bryan in advance of the guilty-plea hearing. Attorney Bryan testified that he always reviews with

9

the client the discovery received from the State before counseling the client regarding a guilty plea, and he would have done nothing different in Benavides' case. (Tr. pp. 31-32). Thus, Patel's statement was known to Attorney Bryan.

Despite Patel's statement, there are three witnesses placing Benavides at the motel just before and just after the robbery took place. A witness heard Benavides tell Wilson to "come on" shortly before Wilson picked up a handgun. (Exh. Vol. p. 2). Carroll and Barton saw Benavides walk with Wilson towards the motel and returning with money in their hands, telling Carroll to drive away quickly. (Exh. Vol. pp. 2-3, 25). Moreover, Wilson gave a full confession admitting that Benavides participated in both breaking into Patel's apartment and taking Patel and his wife's money at gunpoint.

During the robbery, Patel was held face down so he was unable to see very well and he stated that his assailants wore masks. Due to the substantial evidence which supports and identifies Benavides being at the crime scene, Patel's inaccurate identification is not enough to preclude a conviction. We, therefore, cannot say that Benavides' counsel overlooked a defense.

### B. *Advisement on Penal Consequences*

Benavides also claims that Attorney Bryan incorrectly advised him that he would receive a hundred-year sentence in FB-21 unless he pled guilty in this case. To set aside a conviction because of a counsel's incorrect advisement of the penal consequences, a petitioner is required to establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to the penal consequences were material to

10

his or her decision to plead. *Willoughby v. State*, 792 N.E.2d 560, 564 (Ind. Ct. App. 2003), (*citing Segura*, 749 N.E.2d 496, 507 (Ind. 2001)). Merely alleging that the petitioner would not have pled guilty had the correct advice been given is deemed insufficient. *Id.* Specific facts coupled with the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea. *Id.* In other words, "a petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Carrillo v. State*, 982 N.E.2d 461, 465 (Ind. Ct. App. 2013).

Attorney Bryan testified that his practice was to discuss possible sentences and acceptance of responsibility as an arguable mitigator. Benavides also testified that Attorney Bryan told him he was "more likely to receive a lenient sentence" for both cause numbers if he were to plead guilty in this case. (Tr. p. 39).

Here, Benavides received a substantial benefit from pleading guilty. In exchange for the plea of guilty, the State agreed to dismiss Count I, armed robbery, a Class B felony, I.C. § 35-42-5-1; Count III, unlawful possession of a firearm by a serious violent felon, a Class B felony, I.C. § 35-47-4-5; and Count IV, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11, and also agreed to cap his sentence at ten years . A Class "B" felony carries a penalty upon conviction of a fixed term between six (6) and twenty (20) years in prison. *See* Ind. Code § 35-50-2. Since Benavides was initially

charged with five Class B felony convictions which included robbery as a Class B felony and burglary as a Class B felony, which were crimes of violence pursuant to Indiana Code § 35-50-1-2(a), a 100-year sentence is not a fabrication of a potential sentence under the conduct rule of § 35-50-1-2(c). As a result, Benavides has failed to establish any evidence that would indicate that Attorney Bryan rendered any incorrect advice as to the law and the penal consequences, nor has Benavides shown that he would have not pleaded guilty had counsel "correctly advised him." We, therefore, find no improper advisement here.

### III. *Post-Conviction Court's Procedural Rulings*

Next, Benavides claims that the post-conviction court abused its discretion by refusing his request to appoint counsel for his post-conviction proceedings, and by failing to rule on a motion in reference to the jail's denial of Benavides' access to the law library. Generally, we review a post-conviction court's procedural rulings for abuse of discretion. *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005), *trans. denied*. An abuse of discretion occurs when a post-conviction court's decision is clearly against the logic and effect of the facts and circumstances before it. *Fuquay v. State*, 689 N.E.2d 484, 486 (Ind. Ct. App. 1997), *trans. denied*.

Turning to Benavides' request for appointed counsel, we note that, "Neither the Sixth Amendment of the U.S. Constitution nor Article I, Section 13 of the Indiana Constitution guarantee the right to counsel in post-conviction proceedings." *Graves v.*

12

*State*, 823 N.E.2d 1193, 1196 (Ind. 2005).  Also, Indiana Post-Conviction Rule 1(9)(a) states:

> Upon receiving a copy of the petition, including an affidavit of indigency, from the clerk of the court, the Public Defender may represent any petitioner committed to the Indiana Department of Correction in all proceedings under this Rule, including appeal, if the Public Defender determines the proceedings are meritorious and in the interests of justice.  The Public Defender may refuse representation in any case where the conviction or sentence being challenged has no present penal consequences.  Petitioner retains the right to employ his own counsel or to proceed pro se, but the court is not required to appoint counsel for a petitioner other than the Public Defender.

After Benavides filed his Post-Conviction Relief petition, the Public Defender initially filed an appearance to represent Benavides and investigated his case.  However on October 26, 2011, the Public Defender withdrew without giving a specific reason.  In light of Rule 1(9)(a), it can be reasonably inferred that the Public Defender could have withdrew upon determining either (1) that Benavides' claims lacked merit or were not in the interest of justice; or (2) that Benavides' conviction no longer carried present penal consequences.  *See* Ind. Post-Conviction Rule 1(9)(a).  We conclude that the post-conviction court did not abuse its discretion by refusing Benavides' request for appointment of counsel in the post-conviction proceedings.

Next, Benavides claims that the post-conviction court abused its discretion by not explicitly ruling on his Motion for Order to Release Prisoner Off Max I Status, which concerned his lack of access to the law library.  "No error or defect in any ruling or order

13

or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where it's probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." Ind. Appellate Rule 66(A).

The lack of a ruling on the merits of this motion did not affect Benavides' substantial rights. Beyond his own assertions, Benavides has not provided any evidence that he was actually denied access to the law library during a relevant period of time. Looking at the record as a whole, Benavides was able to timely file all the proper paperwork and has shown that he was able to adequately conduct legal research relevant to the issues raised in his petition. His brief contains a substantial amount of case law along with pin point citations. Thus, there is no evidence that Benavides was unable to access the law library. Therefore, we conclude, that the post-conviction court did not abuse its discretion by declining to rule on the motion.

## CONCLUSION

Based on the foregoing, we conclude that (1) Benavides did not receive ineffective assistance of trial counsel; and (2) the post-conviction court did not abuse its discretion by refusing to appoint Benavides a Public Defender and by declining to rule on Benavides' procedural motion.

Affirmed.

KIRSCH, J. and VAIDIK, J. concur

14