## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 16 2016, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

David W. Singer
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Wayne Singer,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

June 16, 2016

Court of Appeals Case No.
49A02-1509-PC-1418

Appeal from the Marion Superior Court.
The Honorable Lisa F. Borges, Judge.
The Honorable Anne Flannelly, Magistrate.
Cause No. 49G04-8907-PC-74228

**Barteau, Senior Judge**

## Statement of the Case

[1] David Singer appeals the post-conviction court's denial of his petition for post-conviction relief claiming ineffective assistance of trial counsel. We affirm.

# Issue

Singer presents a single dispositive issue for our review which we restate as: whether the post-conviction court erred when it concluded that Singer was not denied the effective assistance of trial counsel.

# Facts and Procedural History

The underlying facts, as stated in Singer's direct appeal, are as follows:

> Singer admitted abusing his twin step-daughters over a period of six years, beginning when they were seven years old. The abuse occurred at least twice a week with both girls and took many forms: (1) Singer would touch their genitals, and had the girls manipulate his genitals until he ejaculated; (2) he forced them to submit to cunnilingus; (3) he forced them to commit fellatio, often ejaculating in their mouths; (4) he had the girls perform cunnilingus on each other while he masturbated in their presence; and, (5) he had anal intercourse and unsuccessfully attempted vaginal intercourse with both the step-daughters.
>
> During the time Singer was sexually abusing the girls, he said that he would kill himself if they left him, threatened them with violence if they did not keep silent about the molestations, and beat them with extension cords, hangers, and belts. Singer threatened one step-daughter with a knife, threw the other step-daughter through a glass window, and then kicked her in the stomach.
>
> Singer pled guilty to all eleven counts charged by the State. Counts I, II, IX, X, and XI, were for child molesting as a Class B felony, which carries a ten-year presumptive sentence with a maximum ten-year enhancement. The trial court enhanced all five of those counts by ten years and ordered that they be served consecutively, resulting in a 100-year sentence. Counts III, IV, and VII, were child molesting and Counts V and VI were

vicarious sexual gratification; all were charged as class C felonies with four-year presumptive sentences. The trial court imposed the maximum four-year enhancement and sentenced Singer to eight years on each of those counts, which were to run concurrently with the previous counts. Count VIII was for child molesting as a Class D felony, which carries a presumptive sentence of one and one-half years, with an equivalent maximum enhancement. The trial court sentenced Singer to three years on Count VIII, to run concurrently with the previous sentences.

*Singer v. State*, 674 N.E.2d 11, 13 (Ind. Ct. App. 1996) (footnotes omitted).

[4] On direct appeal, Singer argued that his 100-year sentence was manifestly unreasonable and that the trial court failed to properly consider certain mitigating factors. This Court affirmed Singer's sentence on November 27, 1996. *See id.*

[5] On September 19, 1997, Singer, pro se, filed a petition for post-conviction relief, which he was permitted to withdraw without prejudice on March 12, 2001. On February 7, 2013, Singer filed another pro se petition for post-conviction relief, which he later amended. A hearing was held on Singer's amended petition on February 25, 2014. The parties submitted proposed findings and conclusions to the post-conviction court, and, on August 19, 2015, the court issued findings of fact and conclusions of law denying Singer's petition. This appeal ensued.

## Discussion and Decision

[6] Singer contends the post-conviction court erred by concluding he failed to show that his trial counsel's performance was deficient and that he suffered any prejudice. To the extent the post-conviction court has denied relief, the

petitioner appeals from a negative judgment and faces the rigorous burden of showing that the evidence, as a whole, leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Harris v. State*, 762 N.E.2d 163, 166 (Ind. Ct. App. 2002), *trans. denied*. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error — that which leaves us with a definite and firm conviction that a mistake has been made. *Kistler v. State*, 936 N.E.2d 1258, 1261 (Ind. Ct. App. 2010), *trans. denied*. In this review, findings of fact are accepted unless they are clearly erroneous, and no deference is accorded to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Witt v. State*, 938 N.E.2d 1193, 1196 (Ind. Ct. App. 2010), *trans. denied*.

[7] Before addressing the merits of Singer's claim, we must first attend to the motion he filed with this Court requesting that we take judicial notice of the transcript of a pre-trial conference that took place on October 11, 1989, in his underlying criminal case. At that conference, Singer declined a plea offer, and it is this plea offer that is the basis for his claim in the present post-conviction appeal. Some background information will be beneficial.

[8] The post-conviction court held a hearing on Singer's petition on February 25, 2014. When asked about the October 1989 conference at the hearing, Singer's trial counsel, Attorney Baratz, testified: "You shouldn't have to ask me that. There should be an actual record of that pre-trial conference." Tr. p. 35. Singer states it was then that he "became aware of the possibility of a pre-trial

transcript, even though the pre-trial conference of October 11th did not, at that time, appear on the CCS." Appellant's Br. p. 7. At the State's request at the post-conviction hearing, the court took judicial notice of its file, noting that the pre-trial memos of plea offers made and declined were included therein. In addition, it appears from the transcript of the hearing that the post-conviction court was in possession of the record of proceedings from Singer's direct appeal and included that material as part of its file. Following the hearing, Singer petitioned the post-conviction court in April 2014 for the production of transcripts of pre-trial hearings and memos of plea offers, specifically requesting the transcript and plea offer memo from October 11, 1989. The court granted Singer's request but noted that "according to JUSTIS [Marion County criminal justice records system] records, no hearing was conducted on October 11, 1989, so a transcript cannot be prepared." Appellant's App. p. 160.

[9]     Although it is not clear from the materials on appeal when the transcript of the October 1989 pre-trial conference was discovered or by whom, a copy of the transcript was attached as Appendix B to Singer's proposed findings of fact and conclusions of law filed with the post-conviction court on September 19, 2014. In his brief to this Court, Singer merely states that he requested and was able to obtain the transcript of the October pre-trial conference. The post-conviction court adopted the State's proposed findings and conclusions and issued its denial of Singer's petition for post-conviction relief on August 19, 2015. In adopting the State's findings and conclusions, the post-conviction court implicitly adopted footnote 2 of those findings and conclusions stating that the

documents Singer attached to his proposed findings and conclusions, which includes a copy of the transcript of the October 1989 conference as Appendix B, "are not evidence in this matter." *Id.* at 313.

[10] On November 10, 2015, Singer filed with the post-conviction court a motion entitled "Verified Motion for an Order Compelling the Clerk to Make Corrections to the Clerk's Record on Appeal" stating that the court's CCS was missing an entry for the October 11, 1989 pre-trial conference, requesting that the error be corrected, and providing a copy of the transcript of the October 11 conference. The court granted Singer's motion and ordered the clerk to make the changes to the CCS. A few days later on November 19, 2015, Singer filed a "Verified Motion for an Order Compelling the Court Reporter to Make Corrections to the Transcript" asking that the court reporter be ordered to prepare a supplemental transcript containing the pre-trial and guilty plea transcripts as designated in his Notice of Appeal. The court denied Singer's motion, and Singer then filed his motion with this Court requesting that we take judicial notice of the trial court's record, specifically the transcript of the October 1989 conference.

[11] The two-part question in this case then is whether an appellate court can take judicial notice of a portion of the record that the post-conviction court did not consider, and, if so, whether it is appropriate to take judicial notice of the portion of the record when we are supplied only with a copy. For quite some time it was a well-settled rule that a post-conviction court could not take judicial notice of the transcript of the evidence from the original proceedings; rather, the

transcript had to be admitted into evidence just like any other exhibit. *See State v. Hicks*, 525 N.E.2d 316, 317 (Ind. 1988). This rule stemmed from the general rule that a trial court could not take judicial notice of its own records in a prior, separate case, even though the parties and subject matter were related. *See Hutchinson v. State*, 477 N.E.2d 850, 854 (Ind. 1985). However, effective January 1, 2010, amended Indiana Rule of Evidence 201(b)(5) now permits courts to take judicial notice of "records of a court of this state." *See Horton v. State*, No. 79S02-1510-CR-628, slip op. pp. 6-8 (Ind. April 21, 2016) (discussing amendment of Evidence Rule 201 and best procedures for trial courts when taking judicial notice of their file). Moreover, we are mandated to take judicial notice if a party requests it and has supplied us with the necessary information, as Singer has done here. *See* Ind. Evidence Rule 201(c)(2). In addition, section (d) of Evidence Rule 201 permits the courts of this state to take judicial notice at any stage of the proceeding. Accordingly, it is our obligation under Evidence Rule 201 to take judicial notice of the transcript of the October 1989 pre-trial conference.

[12] Further, it is plain that Singer made several attempts to obtain the transcript of the October 11, 1989 pre-trial conference, to have the transcript considered by the post-conviction court in its decision, and to include the pre-trial conference transcript as part of the transcript on appeal. Moreover, the trial court's Pre-Trial Conference Memorandum from the October 11, 1989 pre-trial conference is contained in the record of proceedings of the trial court all of which was judicially noticed by the post-conviction court. At first blush, it may appear

that our taking judicial notice of a part of the record not considered by the post-conviction court in its decision and of which only a copy has been made available would cause an inequity to the State. However, the post-conviction court had an opportunity to consider this part of the record before it issued its final decision because Singer included a copy of the transcript, attached as Appendix B, with his proposed findings and conclusions. Additionally, having received a copy of Singer's proposed findings and conclusions, the State had access to the transcript, or at least a copy thereof, in preparing its findings and conclusions to the post-conviction court and when preparing its brief to this Court. Yet, the State did not file a motion to strike the copy of the transcript from Singer's proposed findings and conclusions; the State filed nothing with this Court in response to Singer's motion to take judicial notice of the transcript; and the State neither made mention of nor presented argument on this topic in its brief to this Court. Accordingly, it seems reasonable to infer from the absence of any objection by the State that there is no reason to dispute the accuracy of the copy of the transcript of the October 11, 1989 pre-trial conference provided by Singer. It would seem, then, to be inequitable not to the State but to Singer to deny him the ability to effectively appeal the post-conviction court's decision based on that court's decision to prohibit him from including the transcript with the record and transcripts on appeal. Given these circumstances, we grant Singer's motion to take judicial notice of the transcript of the October 11, 1989 pre-trial conference. *See Fisher v. State*, 878 N.E.2d 457, 460-63 (Ind. Ct. App. 2007) (determining, prior to amendment of Evidence Rule 201, that appellate court, in post-conviction appeal, could take judicial

notice of record of petitioner's direct appeal, even though post-conviction court did not consider record in its decision and State did not have access to record at post-conviction hearing or in preparing appellate brief), *trans. denied*.

[13] We turn now to the merits of Singer's appeal. In challenging the post-conviction court's decision, Singer maintains that his counsel was ineffective for advising him to reject a plea offer, resulting in the filing of additional charges and, ultimately, the acceptance of a less favorable plea offer that resulted in a longer sentence.

[14] To prevail on a claim of ineffective assistance of counsel, a defendant is required to establish both (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defendant. *Johnson v. State*, 948 N.E.2d 331, 334 (Ind. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To satisfy the first element, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that counsel's errors were so serious that the defendant was denied the counsel guaranteed by the Sixth Amendment. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013). In order to satisfy the second element, the defendant must show prejudice; that is, a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 1139. There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the defendant has the burden of overcoming this presumption. *Harris*, 762 N.E.2d at 168-69.

[15] At the heart of Singer's claim is the plea offer discussed at the October 11, 1989 pre-trial conference. Singer asserts that it was Attorney Baratz's bad advice and lack of preparation that caused his rejection of the initial plea offer and, in the end, resulted in a longer sentence. This Court is not convinced.

[16] The pre-trial conference memo dated October 11, 1989, reflects an offer of fifty years and an agreement not to file any additional charges in exchange for Singer's plea of guilty to five charges. Direct Appeal ROP p. 33. The form contains a check mark next to the "refuses" option and is signed by Singer and Attorney Baratz. *Id.* Additionally, the transcript of the October 1989 pre-trial conference, of which we have taken judicial notice, consists of the following colloquy:

> THE COURT: 8974228. Mr. Singer, your attorney indicates that you have refused the offer of the State; is that right?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: This is set for trial October 23rd.
>
> MR. BARATZ: Judge, this is the first trial setting. I'm going to be requesting a continuance. Ms. Orbison tells me that she has additional discovery, as well as you can see from the pretrial, we may have some other matters that we need to have more information about before we resolve this. I anticipate this is going to be a plea based on what Mr. Singer tells me, but I think it's important that he have the additional information before he enters into a plea.
>
> THE COURT: And the State does not object to a continuance?
>
> [STATE]: No, Your Honor.

THE COURT: Show it removed from the October 23rd jury calendar. Show it reset for jury trial January 25th at nine o'clock in the morning.

MR. BARATZ: Thank you, Judge.

Appellant's App. p. 350.

Singer called Attorney Baratz as a witness at his post-conviction hearing. Attorney Baratz testified that he had performed criminal defense work almost exclusively since 1969, including defending serious felonies involving sex crimes, murders, and death penalty cases. He testified that he has never turned down a plea offer without allowing his client to participate in the decision-making process. When asked about the plea offer discussed at the October 11, 1989 pre-trial conference, Attorney Baratz testified that he had no specific recollection of the hearing at which the plea was discussed but that, if a plea was offered, the judge always confirmed with the defendant his decision to either accept the plea, reject the plea, or consider the plea. Singer further questioned Attorney Baratz as follows:

SINGER: But you're positive I rejected it and you did not return and allow me to sign it even after I said I wanted to?

ATTORNEY BARATZ: Yes.

SINGER: You don't remember any of that?

ATTORNEY BARATZ: I would not have made that decision, you would have.

SINGER: That couldn't have been a mistake? It couldn't have been you got busy with your ---

ATTORNEY BARATZ: No, absolutely not.

SINGER: --- chemotherapy?

ATTORNEY BARATZ: No.

Tr. p. 36. On cross-examination, Attorney Baratz was asked if he at any time coerced or tried to persuade Singer to make a decision one way or the other as far as pleading guilty. Attorney Baratz responded, "Not coerce, but probably persuade him – attempt to persuade him to take the better offer. . . . The initial offer that wouldn't involve the State filing additional charges." *Id.* at 42.

[18] Further, the transcript of the October 1989 pre-trial conference does not reveal, as Singer alleges, that Attorney Baratz was unprepared with regard to the State's initial plea offer. Attorney Baratz's comments accompanying his request to continue the trial date were not meant to explain the reason for Singer's rejection of the plea offer but rather to explain the reason for the request for a continuance and to apprise the trial court of the status of the case. Moreover, it appears from the record of proceedings of Singer's direct appeal that the other matters about which more information was needed, as referenced by Attorney Baratz at the October 1989 conference, were evaluations of Singer. In December 1989, Attorney Baratz filed Singer's notice of intention to offer the defense of insanity and requested the court to appoint two psychiatrists to examine Singer. In addition, a few months later Attorney Baratz requested and received permission from the trial court to have Singer evaluated by an expert in the treatment of sexual disorders.

[19] At the post-conviction hearing, Attorney Baratz testified that Singer "readily embraced" his daughters' very extensive, detailed statements of what he had

done to them and that Singer "at all times" admitted that he was guilty of the charges. *Id.* at 21. Attorney Baratz explained that he would have taken formal depositions of the girls but Singer was so accepting of his daughters' allegations that he asked Baratz not to depose the girls because he did not want to put them through a deposition or a trial. He also testified, "It troubled me that the Court would need to know more about him that brought him to the position of committing those crimes, and so that's why [the evaluations were] done to better explain his behavior." *Id.* at 40. Specifically with regard to the sexual disorder evaluation, Attorney Baratz testified that the evaluation "was for purposes of negotiating [Singer's] case and to try to prevent [Singer] from throwing [him]self on the mercy of the Court as [he] wish[ed] to do and receive a greater sentence. That was – that was asked for to better explain [Singer's] behavior to the prosecutor and the Court for use in a sentencing proceeding and negotiations." *Id.* at 17. With regard to the report itself, Attorney Baratz testified, "The report [ ] says that [Singer was] subjected to a number of circumstances during [his] youth and eventually became the person that [he is]. It better explains [his] behavior. . . . I thought it had a lot of value. I shared it with the prosecutor and the Court as well." *Id.* at 18.

[20] We have been presented with no evidence of bad advice or unpreparedness on the part of Attorney Baratz. Attorney Baratz testified unequivocally that it was Singer's decision to reject the plea, and the evidence discloses that his request to continue the pre-trial conference was to obtain information to aid in negotiating an acceptable plea for Singer once he rejected the State's initial offer. Finding

no deficient performance of counsel, we need not address the prejudice component of the *Strickland* test. *See Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008) (failure to satisfy either prong of two-part test will cause defendant's claim to fail).

## Conclusion

[21] For the reasons stated, we conclude that Singer has not established ineffective assistance of trial counsel and that the evidence does not lead unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

[22] Affirmed.

Brown, J., and Pyle, J., concur.